Case number 18-6039 Stevie England v. DeEdra Hart. All arguments not to exceed 15 minutes preside. Mr. Chanson Cheng for the appellant. Good afternoon your honors. My name is Chanson Cheng here on behalf of Petitioner Mr. Stevie England. May I proceed? Please. During Mr. England's custodial interrogation he made a clear request for counsel. In response to accusations that he participated in a murder for hire and the demand that he cooperate or face a more serious punishment, Mr. England said, quote, I guess you'll have to go on and lock me up then and call my lawyer, end quote. Is that a clear request for counsel? Yes it is your honor. What's your best case for that? That's what you're getting ready to argue to us right? Yes yes I believe so your honor. Police did not call Mr. England's lawyer and instead continued to pressure him into making an inculpatory statement. Under Supreme Court precedent while a request for an Can I ask you a question though? I know so he says I guess you'll have to go on and lock me up then and call my lawyer. But then he says more after that right? He says because I don't know what you're talking about I'll be honest with you. Like I said we're friends I've never seen that woman in my life. I mean doesn't the rest of the statement suggest that he's still talking? I'll be honest with you. What does that mean? I'm still talking to you. I'll be honest with you. If he if it was an unequivocal request for a lawyer he'd say okay I guess you'll have to lock me up and call my lawyer. We're done. But he says no I'll be honest with you etc. Why is that not indicative of him not wanting to talk further? So your honor I do agree that you can take the remainder of his statement in context. I don't think there was a Supreme Court requirement that your request for a counsel be the last statement that you made. But I think in this under the circumstances here where the officer has presented Mr. England with two options. One cooperate with us and potentially get a more lenient sentence. Or two refuse and potentially face a harsher sentence. Mr. England's response and his choice is clear. He says I guess you have to lock me up then because he's not interested in speaking further and he called my lawyer. And then the statements that follow further buttoned up his expression that he no longer wishes to continue their interrogation. He says you know me and Tyrone are friends. I've never seen that woman in my life. And then he stops. It's only after further prodding from the officer including by playing a tape conversation that Mr. England responds further to the interrogation. So the Supreme Court case that you would rely on given that we're in habeas. The Supreme Court case is Davis. Is that it? Davis really sets the standard. Although the statement in Davis was not found to be a clear and unequivocal request for counsel. You know we would rely on the Smith v. Illinois 1984 decision from the to the officer's question. And I'm quoting here from the opinion that you have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that? That wasn't a question from the officer. The accused response in that situation was yeah I'd like to do that. So to be clear the statement was in response to the officer asking whether the accused understood his Miranda rights and not actually whether he wished to invoke them. And while that's not a perfectly precise response the Supreme Court nonetheless acknowledged the statement was a clear request for counsel under the circumstances. I think Mr. England's request is likewise clear in context given the officer's presentation of two options and then Mr. England's response that he does not wish the interrogation to continue. So going back to the applicable standard the Supreme Court has has made clear that although a request must be unambiguous the accused need not speak and I'm quoting here from the Davis opinion that's 512 U.S. 452 and 459. The accused need not quote speak with the discrimination of an Oxford Don. End quote. Rather the words of the request must be quote understood as ordinary people would understand them. End quote. And that's an explanation from the Supreme Court's Connecticut de Barrett decision 479 U.S. 523 at 529. In accordance with these principles cases from the Supreme Court in this one make clear that an individual need not make their request with perfect linguistic precision. In addition to dismiss the Illinois case that we that I just discussed for example this court in its 1998 decision in Kiger v Carlton that's cited in the open brief at page 22 the officer asks the accused quote would you answer some of our questions without an attorney present. End quote. The response which was to be a clear request for counsel was quote I'd just as soon have an attorney because you know they'll say there's been a shooting involved and that's a serious charge. End quote. Now this is using this this petitioner didn't say it that clearly did he just said you can just put lock me up and you can call my attorney right. So our view is that Mr. England's statement is actually even more clear than the statement in Kiger. You know the words I'd just as soon as you know I think are understood in normal language to be expressing a preference or I would like something. You know here Mr. England has two parts to his operative statement. I guess you can go on and lock me up then. In other words expressing that he's no longer interested in continuing the discussion with the officer and call my lawyer of course which is a direct unequivocal unconditional request for the counsel. I think important. If that's true why isn't then why doesn't the Perot case have the better I mean that's where you said well then let's just call a lawyer or whatever I mean isn't that more that's basically what your client said here. I mean if we're gonna look at our cases and you know I know they don't they don't set forth what the clearly established rule is but you know if we're gonna talk about Kiger whatever in these other cases why isn't Perot the one that's most on point. So yes your honor we're aware of the Perot case and that featured prominently in the district court opinion. You know I think it's important to look at the Perot case where the accused I think was basically being asked by the officer to provide his sort of best case to get leniency and then you know after the accused makes some kind of statement you know the officer says back to him is is that all you've got is that all you have to offer us and under those circumstances it is clear there's some kind of negotiation going on and which is I think you know it's usually reflected in the decisions reliant on the fact that they were in some kind of bargaining position you know that in the circumstances here you know I think that's clearly not the case the officer has presented Mr. England with two options you know attempt to cooperate or you know you know face a harsher punishment refusing to face a harsher punishment it's clear that he'll elect the latter you know nothing about that statement indicates an interest in negotiating with the officer. If we find that this is as a violation of right to counsel can we look at the prejudicial effect I mean I'm not sure the district court did because it found it was appropriately introduced but what about that? Sure so so the prejudice from the admission of the interrogation statement I think it's clear from the record you know I think that an additional sort of overlay to all of that is the Supreme Court explained in the Arizona v. Fulminante case that accused confession or their own words are very powerful evidence you know they are the words of Mr. England himself and the Commonwealth did play a recording of nearly the two hour interrogation at trial you know obviously they thought it would have not by the officers but by somebody else right and he said he kicked her in or something like that and talked about what he did to this woman right so two separate issues your honor or two sort of separate pieces of evidence you know there are the interrogation statements themselves where Mr. England you know did an inculpatory statement explaining that you know he was he was there at the victim's home etc and then and then there was another set of evidence that are recordings made by a police informant Mr. Carl Woodford that have some of those statements I believe that the warden has cited some of that say on tape this type of incriminating material or was the tape only with Woodford having to do with whether McCray was going to pay and owed money to England your honor I think you're the latter is it's closer to an appropriate characterization of the testimony you know it the police interrogation is where he makes a lot of this very detailed statements about what he did that evening you know his involvement that evening what happened and what transpired during the course of that on the tape with the informant he said that he hit her I thought he said he ran out and hit her and knocked her out and then he should have just doesn't he say I should have just shot her and uses other words that I won't repeat but I mean isn't that didn't that on the tape to the informant so we don't dispute that those those statements were made on the tape with the informant I think a couple of points if I may briefly yet I realize that time is expired but just a couple of points briefly you know as we explained in the opening brief of page 42 there were a lot of issues with the informant and his credibility in this reward for but on the top of that you know the standard does the credibility affect what I mean these are England's own words aren't they why does the credibility matter what he said on the tape well well part of the credibility is the incentive of mr. Woodford there was a $10,000 reward for evidence leading to somebody's conviction you know I think as part of the the lower court proceedings I think that the magistrate judge at one point noted that the statements are not as clear as for example the interrogation statements and you know I would add that the standard here is not one of requiring that the conviction could stand alone but rather not if they're that the statements had a substantial and injurious effect on the jury's verdict and we believe that's the case given the powerful nature of you know his own statements and the fact that this came from very detailed nature of his statements coming from a you know nearly two-hour interrogation thank you your time has expired so we'll give you your rebuttal time thank you your honor Lucas you have to unmute good afternoon may it please the court and mr. Chang part of the the standard for under Davis for revocation invoking the right for counsel is that a defendant must articulate his desire for counsel sufficiently clearly that a reasonable officer in the circumstances would understand it to be a request for an attorney so if we take those three little words call my lawyer out of context they look entirely different within the context but they were within the circumstances that the officers were in it was a lengthy conversation they entered into the conversation saying we know what you did we have you confessing that you did we've got you and you can talk or not basically and mystery why does the context I why mr. Chang right the context he was he was presented with this kind of binary choice right you can cooperate or not and he says you know look well then you're gonna I guess you're gonna have to lock me up and call my lawyer because I'm choosing option B not cooperate is there anything ambiguous about that well to the point that you made earlier that he continued talking he said I don't know he said I'll be honest with you he said and then two more statements being tired friends and I've never seen that lady he never stopped he never asked for them to stop he never articulated that he wanted his hurting there he said you can easily pull out take me to jail or lock me up was there any gap in there between the time that he said you might as well lock me up and call my lawyer and then going into the next was there something like five minutes or ten minutes or anything it was in the same breath I'm sorry your honor it was in the same breath okay it was continual um but he didn't say why he wanted a lawyer he didn't say I want my lawyer present with me now why he didn't say if call my lawyer and let him know I'm in jail or doesn't defend does the accused person have to say that under Davis is it necessary for someone like mr. England to explain why he wants a lawyer I believe so because um Davis all the the suspect said maybe I should talk to a lawyer he didn't say I need a tentative maybe I should speak to a lawyer with a maybe indicating maybe maybe not it wasn't unambiguous or unequivocal there what could he have meant here other than call my lawyer to address this particular situation it didn't mean call my lawyer I need to draft a will or I need to sell a piece of property it's like call my lawyer I you're interrogating me I need a lawyer well he said it after saying lock me up he there's other cases with suspects who said I think I should talk to a lawyer what do you think it'd be nice to have an attorney um there's one particular case from the Sixth Circuit told her V sheets and first of all this X said I will be quiet you said I know I have the right to be quiet I will be quiet and then he kept talking and this court said that's not unambiguous or unequivocal and then he said stop talking so everything after stop talking was inadmissible because he had made he had articulated that he didn't want to talk anymore and then that is the right it's not the right to attorney but similarly so this is also this is a habeas case and the standard for habeas is very high it's whether fair-minded jurists could possibly disagree that the state court did not the state court precedent so here the controlling case is Davis isn't there a problem with what the state court said in that the state court said that England's request did not rise to the level of impressing upon the interrogator that the suspect has requested an attorney isn't that a subjective test rather than an object of sentence or to the Supreme Court did invoke Davis and was trying to name was applying the Davis standard and definitions of impress is to make someone understand and understand is the word in the Davis standard I'm confused by the way I don't even I don't understand the defendant raised this didn't even raise a Fifth Amendment argument in front of the Kentucky Supreme Court it was just a Sixth Amendment right to counsel yes isn't why isn't the whole thing waived is it just because the Supreme Court went ahead and the prosecution's case was Woodfork the informant he had his own not only did he have the recordings he had a shared experience with England and as far as his credibility the jury heard vigorous cross cross-examination to determine his lay and wait and said I came out like a running forward and pop and Woodfork said did she go to sleep England said gone he said I wish I'd shot the and he said twice two different times he said I did all the work he did he ran the circle in a truck but I did all the work I need my money and so these were he also said he see he see what he saw what I did what is what makes you think I won't do that to him he's gonna pay so the the case was strong are you suggesting this that if we find that there was prejudice in his statement to the police then you could rely upon Brecht itself to show that there was not sufficient prejudice here practice been used in cases like this um I it's the breath test is whether the error had substantial and injurious effects or influence in determining the jury's verdicts um I think that without it I think there was plenty of evidence for the jury Woodfork also had the shared experience of preparing for the murder they even went to the house two different times he in he said we received McCary gave us each thousand dollars of brand-new $100 bills and white envelopes and the police went to the bank and ascertained that approximately three weeks before the $2,000 cash but if we're looking at prejudice why isn't the introduction of a confession to the police such substantial harmful evidence that it would be viewed under the Brecht standard as not harmless error even if it's not harmless error I I don't even think we get to harmless error because it was so ambiguous and the cases there any cases that's that are there any that hold that the admission of a confession is harmless say that the admission of confessions are harmless I just don't see I mean I don't know maybe in this case because he's on tape with an informant so it's kind of like a you know another confession I guess but I don't remember did you cite any cases where there were where this kind of thing was harmless um I did not in the case that mr. Chang mentioned Kiger the court addressed whether a confession was harmless in that case it wasn't but I think here if you do Brecht you have to apply the van Arsdal factors and part of those are whether the testimony was cumulative whether there was corroborating or contradictory evidence the extent of cross-examination and the overall strength of the prosecutors case and it was corroborated it was cumulative because of the Woodford was robustly cross-examined and also mr. Ingalls counsel also focused with cross-examination on collection of physical evidence but he really let me ask you this question if the confession would there be any way to affirm if if the confession were I'm sorry if the yeah if the confession is problematic then what do we do with the affidavit because the harmless error analysis on the affidavit relies on the confession being okay doesn't it I mean if you don't have the affidavit and the confession is out then you know what would we do with that the affidavit had very little did not have much of a role in the Commonwealth case it was mentioned two minutes out of a five-day trial everything in it was already in the admitted testimony of Corey Poindexter and it was in the context of this was an investigation tool it pointed the police toward McCary then we found out that it didn't lead to McCary's arrest he wasn't arrested until after Woodford came forward the detective testified that the case would never have been solved without Woodford didn't the affidavit also say something about the carry said if he wasn't gonna do it he's gonna get somebody else to do it yes but that was also testified in the testimony of Corey Poindexter so it was it was corroborated and cumulative the affidavit said nothing about England did not mention England did it no the victim did not know England never knew him she didn't know he existed he was he hired the he murdered for hire he had nothing personal in in this so how would you lay out for us what is different between what England confessed to after he made the statement about call my lawyer what's different between that and what Woodford caught England saying on tape he described in the confession I think he described hitting the victim one time when he came out of the garage the one where he told Woodford he came running he came out like a running forward I think one major purpose of his confession the police was confirming the scene just confirming how the crime scene looked and what happened at the crime scene to cause to cause it to look like that but he he confessed to Woodford he he just went in a little bit more detail but he really didn't go beyond the one punch except he said I did all the work and the victim actually died of strangulation so one could take he said that all the carry did was to drive the truck around in a circle so essentially he said I hit her and knocked her out and then after the truck didn't kill her I got down on her and strangled her and it was the final blow so all of that was on the taped statement that he made to Woodford to Woodford yes he never he never admitted he didn't say that he strangled her did he I mean the prosecution theory was that the truck running over her ended up she died from that right through strangulation no the prosecution's theory was that um someone sat down and held her and strangled her because the truck didn't kill her and that was because the gravel at her feet was so disturbed like she was kicking on the gravel and cleared it out but nothing was on top and the autopsies report was that it appeared to be manual strangulation and I see your red light is on unless there are any other questions from the judges so thank you very much thank you your honor rebuttal yeah I think you can't hear can you hear me now yes thank you if I may proceed a couple of brief points starting with this point about prejudice you know would point out that as explained in the reply brief on pages 12 through 15 you know the statements from mr. England's police interrogation I mean they were relied on by the state Supreme Court basically every which way in finding that there was no harmless error no on multiple occasions mr. England's claims at that at the state Supreme Court level were denied on that grounds and you know if you look at the warden's own brief which characterizes mr. interior mr. England's interrogation statements is damning evidence you know because the statements and the impact of them are pretty clear the thing that I keep harping on and I apologize but I'm having trouble understanding if wood captured England on tape that was played to the jury where England admitted to his participation in the killing of the victim why why can how can we say that admission of the confession is prejudicial so so I think what the confession does it is that it fills in a lot of the gaps that are missing when you look at the statements from the Woodford recordings alone there's no statement in here that he he killed the victim there's no statement in there that he strangled the victim you know I think that part of the reason that their quotes pulled out like that is because that my understanding is that from the nature of the recordings it wasn't the context wasn't always clear especially being viewed in fact in light of the fact that mr. Woodford himself had a thousand dollars trying to elicit incriminating testimony from he says I did all the work what does that mean what it doesn't matter how what Woodford's incentive was to get him on tape he said I did all the work I want the money I mean what is he talking about is he just false bravado I I he really didn't do anything but he wants to think I mean it doesn't mean it seems to me it's you know he doesn't say I strangled the victim but I mean I don't know how else can you interpret I did all the work and he clearly says he punched her I think the problem is is that these statements leave leave it leave certain gaps that the confession clearly filled in and so again you know it also point to the fact that the standard is whether or not the properly admitted evidence had a substantial and injurious effect you know I think given given the gaps and the questions that are left open by this the recordings from the excuse me from the Woodford recordings you know it's it is very powerful that the confession aligned with that was able to fill in all the details and the information that the students here in word for don't don't and if I may have a one one final point about the state Supreme Court's decision and its analysis you know it's that analysis are in multiple respects you know the opinion reads quote in essence England merely said I guess you ought to call my lawyer and I don't know if I need my lawyer because I don't want to get into trouble you know the two problems with the statement are that they repackage and restate industry we change mr. England's statement but also problematic is that they've conflated both mr. England's later request with a statement that came later in time which you know we're not contending is a request for counsel but you know there's later statement that says I don't want to get into no trouble I mean my lawyer and I don't know the state Supreme Court erred by using that statement to cast doubt on the clarity of the original one thank you and your time is up now and mr. Chang I see that you've been appointed pursuant to the Criminal Justice Act and we thank you for your representation of your client and your service of the public interest here thank you both for your argument the case will be submitted and you can now leave and we'll move on to our next case thank you